Good morning, may it please the Court, my name is Ken Florek, I'm here on behalf of Appellant Plaintiff Kwik Products. Trimmer heads in the industry at the time of conception of the press of invention were time-consuming and hard to load and customers complained about these designs. The trimmer head filled a long-felt need in the art because it was the most quickly and easily... My understanding is yes, we are, your honor. What about the inequitable conduct? Yes, there was one counterclaim raised for invalidity and equitable conduct and the trial court did decide no invalidity, which was the basis, the sole basis of the counterclaim. Again, there was a single counterclaim for invalidity, which solely represented inequitable conduct. It was the only allegations in the amended answer. Well, the inequitable conduct was a pretty serious aspect of this counterclaim. In fact, there's an allegation of fraud, which I certainly take a dim view of, because there was no evidence of fraud. There was a failure to cite a reference, which doesn't even seem to be an anticipatory reference, failure to cite a reference as fraud. That is quite different from invalidity. It's also a reprehensible assertion not backed up by evidence. One wonders whether it even meets with, complies with Rule 11 standards, but it certainly is a different allegation than invalidity. I understand that, your honor, and I concur. My point, though, is that the defendants never put on any evidence of inequitable conduct at trial. And defendants have agreed that that was the case. Well, wouldn't that make the inequitable conduct half of the unitary counterclaim subject to dismissal under Rule 12b-6, perhaps? But I don't see anywhere where the trial judge dismissed it under 12b-6 on the merits or otherwise. He simply never said anything at all directed toward the inequitable conduct assertion. My understanding, your honor, is that the trial judge saw a single counterclaim and labeled it as such. These letters we got talk about understandings, but the record doesn't show it. Your honor, the record is, we did put in additional documentation to show what we had from the record that showed it. You mean the letters you wrote to us? Yes. That's what I'm saying, but the record in the trial court does not show that it was disposed of, as the Chief Judge just said. Not by name. No, your honor. You're saying there was one counterclaim. There was one counterclaim. And it was dismissed. And it was dismissed. That's your point. Yes, your honor. Well, we'll have to decide. Well, you said there was one counterclaim with two parts to it. One was invalidity and one was unenforceability. But again, the entire counterclaim dealt with the inequitable conduct. It was a single aspect that was raised in the counterclaim. And it was the single counterclaim that was dismissed by the trial judge. Obviousness and anticipation were not part of the counterclaim? Not as I read it, your honor. Well, then why is the word invalidity in there if it doesn't deal with things such as obviousness? I did not write the answer, your honor. Yes, sir. Well, we can question your opponent. You might as well address the merits, assuming we have jurisdiction. Thank you, your honor. Again, the trimmer heads at the time of conception of this invention were time-consuming, hard to load, and customary. Mr. Florek, if I can make a suggestion to you. You shouldn't use any of your very fleeting, precious time on the basic facts. We've read the briefs. We've looked at diagrams. We've read the patents. We have a feel for this technology. We have a very thorough opinion by an experienced district judge. We have a bench trial. We have findings of fact. We have legal conclusions. You have a heavy burden to show that there was clear error in the infringement findings of the district judge. Well, there was clear error, your honor. The clamping means that the district court found to be a means plus function is not a means plus function. And that's where the district court erred in the claim construction here. I may be self-evident to you, but it's not at all self-evident to me that he is wrong when he says the presumption of 112.6 treatment is triggered by the use of the word means, further reinforced by the vagueness of the concept of clamping, and then he says quite specifically that presumption was never rebutted. Now, where was it rebutted? It was rebutted in the prosecution history, your honor, where the original prosecution history of the 4245. You better point us to something specific that rebutts the presumption because it seems to me he's 100 percent right that the presumption is triggered. There may be a presumption, your honor, but under Greenberg and Lighting World, under Greenberg especially, that is rebutted when there's sufficient structure. Now, Greenberg specifically called out clamp as a structure that while it takes its function from its name, it also provides the structure. Your claim doesn't say clamp. It says clamping means. I call a clamp that, something that clamps. Here we're talking about a cam being urged against a wall, and then we have another embodiment with a different shape. This doesn't sound like the conventional meaning of clamp. It's really clamping means, which performs a certain function, which has specific structures in the spec. Specific structures, as defendant's expert pointed out, during Appendix 590, lines 8 through 19, all such clamps have two members that are brought together by a force. That is the basic structural definition of clamp or clamping, the two members coming together under a force to frictionally hold something between them. And again, though the expert pointed out a wide number of different ways that clamping could be performed, every clamp, his testimony, every clamp has that structure. So the fact that that structure is in every clamp makes that structure. What structure? Two members brought together by a force to frictionally hold something between them. That's a specific well-known structure? Yes, it is, Your Honor. According to the testimony here, two members, we have a wall, we have a clamping member, and we have a force in a spring that holds them together. So because of that, and under Greenberg, which specifically calls a clamp one of the items, by the testimony that clamps have this specific structure, two members brought together by a force. You also have a spring here, and you have a center of gravity? Those are dependent claims, Your Honor. Claim 2 talks about the pivoting of the clamping member. That's assuming we agree with you that there's no 112.6 here. Yes, Your Honor. If there's 112.6, then these are part of the claim. But then you go to the prosecution history, which is where you're supposed to determine the meaning of clamping means, and you see that in the first instance, in the parent application where clamping means is discussed, the examiner first raised a restriction requirement and brought out four different species. And that's at JA 772. The examiner pulled out four species. The applicant elected the first species, the first group, which was directed specifically to figures one through three of the patent. All of those are the spring-biased clamping member, as we've discussed. And then in the amendment, Claim 28 was added. Claim 28 became Claim 1, and it was argued that none of the prior art references showed the spring bias. Now, again, the spring bias was added through the restriction requirement and the argument in the amendment is that none of the prior art has it. I'd like to move on to the construction of Claim 15, where, again, we see that the district court erred in construction, first instance calling out a spring as ambiguous. A spring has an obvious meaning, well understood, and to consider it ambiguous was an error on the part of the trial court. Well, that doesn't say spring means. No, it does not, Your Honor. But the previous claim limitation does go back to clamping member, and if that includes a spring, then that is limited to what's in the specification. It becomes less than generic. Claim 15 is an additional independent claim, Your Honor. I know, but part of the claim is to clamping member. Well, clamping member and not clamping means the clamping member is one of the two members that are pushed together by a force to clamp something frictionally in between. The wall is one, and Claim 15 is much more detailed in the elements. There's a wall on one side, which is one of the clamping members. There's one of the two clamping members. Of course, that claim recites a clamping member pivotally mounted. Yes, it does, Your Honor. The accused isn't pivotally mounted. And because of that, we're looking to the doctrine of equivalence. Again, the considerations that the district court did not take into effect were the fulfillment of a long-felt need in the art, the commercial success of the invention, and that there was no prosecution history estoppel whatsoever as to this member. Again, we have a device that plaintiffs came up with where instead of winding line or weaving it through, you would take a piece of string and just push it in. And that's how it would load. It was the most quickly and easily loaded out there. And that's what the district court found as a matter of fact. The defendant's device was exactly the same thing. You pushed it in and it held. Everything worked exactly the same. The slideably mounted clamping member and the pivotally mounted clamping member are equivalent in this regard. Based on the range of equivalence, the fact that it performs the same function in the same way to achieve the same result. I'd like to save the rest for rebuttal. We'll do that. Thank you. Mr. Foster? Thank you, Your Honor. May it please the Court? It's an honor to be here for the first time. Welcome. The first thing you want to hear from me has to do with the issue concerning the inequities of conduct allegations in the answer and the counterclaim. Well, principally finality. That's the base of it. A little bit of factual predicate is the basis for the allegations to begin with. And the factual support for this is in the record. There was a prior history with regard to the prosecution of the application of the parent patent known as the 424 patent. And during the course of that prosecution, a Claim 28, a new claim after the initial application, had been introduced by the applicant. After dialogue back and forth between the patent office and the applicant, that claim was rejected on the basis of prior art. That claim then reappeared in the form of Claim 1 in the 666 patent, which is the patented issue in this case, with absolutely nothing in the file record to explain why it was that an identical claim that had been rejected in the parent patent now reappears with no further discussion with the patent office as to why it overcame prior art. Also, during the course of the prosecution of the 666 patent, there had been events in Europe where the European patent office had taken certain positions with regard to Why is this all fraud? Didn't we get away from that odd homonym term? We talk about inequitable conduct, if that's what it was. Well, the term fraud doesn't exist in a vacuum. It's fraud on the patent office, which is a term of art that, as I understand it, has been used over the years to equate to inequitable conduct. And I inquired of patent counsel as to whether or not I think the equation has been broken through the years. It takes more than inequitable conduct to prove fraud. It takes affirmative actions to prove fraud. In any event, why wasn't that inequitable conduct claim undecided, and doesn't that affect finality? Well, I don't think it does because I think The whole counterclaim, although the title said invalidity and unenforceability, the whole counterclaim has inequitable conduct, except for the use of the word fraud, at its heart. Well, we did not flesh out, or during discovery, elicit the kind of evidence that, in my judgment, warranted going to trial on the issue of inequitable conduct. And at the end of the trial, In other words, it was a shotgun pleading. Well, no, because I explained that there was a basis for making the allegation to begin with, and it's so often the case when you're alleging intent, you start with the initial good faith basis for making the allegation, and you try to prove it during discovery. After the course of the plaintiff's case and the defendant's case, I made the decision that we were not going to pursue the inequitable conduct claim. There was then a discussion, apparently off the record, although I can't honestly recall as I stand here why that occurred, but there was a discussion off the record with the trial judge, where I said that I was not going to be presenting evidence, and it was done in the context of whether or not Mr. Flora had to bring in a rebuttal witness, specifically Mr. Flora. Mr. Cosella. And I will take responsibility for them when we go back out, not being aware that that was off the record, and then not walking out on the court and making the record clear that that claim or that portion of the counterclaim was being withdrawn. Are you of the view that the case is final? Or you say you're taking responsibility. Do you think there's a gap in the finality? On a purely procedural basis, I do. There is no question that there should have been some colloquy on the record between myself, defense counsel, and the court with regard to that aspect of the pleadings. So you're not resting on the idea that there's one counterclaim and that was dismissed? No, I am not, because we litigated the issue of the validity or the invalidity of the certainly claims 1, 2, 3, and 15 of the 666 patent, irrespective of the four corners of the complaint throughout the discovery, throughout the pretrial proceedings, the pretrial statements, the submissions of the findings of fact, the evidence of trial, and the post-trial submissions. That issue was litigated. So I submit that the issue of the validity of certain of the claims of issue in this case are before the court and appropriate for disposition, and it's something that I came today prepared to argue. But that assumes finality. Invalidity isn't before the court if the case isn't final. I concede that, Your Honor. There is no question that if this court decides that before it can address the issue of the validity or invalidity of the subject claims that there has to be a determination in the court below and that's not there, then you can't decide that issue. I'll concede that point. Obviously, speaking for I think both parties, we would like disposition certainly on the issues that you do have before you. I'm suggesting that my comments here today provide the necessary finality for purposes of addressing the invalidity issue. What about the case law suggesting that pleadings can be deemed to conform to the proof actually presented by the burden-bearing party without formal amendment of the complaint itself? Or the answer. I'm sorry, I didn't mean to interrupt. That is exactly the case law and the jurisprudence to which I was alluding when I described the procedure below where the parties actually litigated the issues of the validity of claims. And you are abandoning, withdrawing, forswearing a counterclaim or a suit in the future on inequitable conduct on this matter? Yes, I am. That's fine. We're not leaving it open so that I can turn around and walk out and whatever happens on this appeal, file another lawsuit on the basis of inequitable conduct. You're saying no. That will not happen. Now, one more collateral question. Whatever happened to the other party, National Express et al., they seem to have disappeared from this case as far as its present posture? No, they're defendants, but they are not cross-pellant. Torbian would be simply cross-pellant on the finding of validity or invalidity. They were defendants in the initial claim for. Well, I understand that, but I take it that even though there was participation below by Mr. Steinman from blank Rome, we don't have a brief from Mr. Steinman here. Well, I represented all the parties at trial. Do you represent all the parties on appeal? I do, yes. Well, then why doesn't your brief so describe it? Well, I'm holding my copy of the corrected brief, the red brief, and I identify myself and my firm as representing Steinman County. Yes, you're quite right. What threw me off is on the reply brief you represent yourself as speaking only for Torbian, Inc., and so I got mixed up about, well, then who is speaking for those other defendants like National Express? But I should have checked the brief brief as well. Okay.